The first case, Village of Freeburg v. Helms Counsel, you ready? Yes. Please report, counsel. My name is Harry Sterling and I represent the Helms family. This case is actually very simple. The fact situation set out on page 5 of the brief. Suffice it to say there were a series of written agreements entered into between the Village of Freeburg and the Helms family. The Helms family agreed to have the village annex certain of its properties into the village. While this was going on, Belleville had approached the Helms family and they wanted the Helms family to be annexed to Belleville. Ultimately, the Helms family elected to go with Freeburg. The contract provided that Freeburg was to build the sewers during a certain time period based upon when the improvements were done to Route 15 that runs between Belleville and Freeburg. The time for that came and went and Freeburg didn't do it. Ultimately, they filed this lawsuit asking for a declaratory judgment that they in essence weren't really bound by what their agreements were because they didn't really have the authority to do so. I think it's important also to note that this isn't a family sitting down with city officials. This is the Village of Freeburg represented by a very knowledgeable village attorney, Greg Nolan, who has fortunately passed away. The Helms family represented by John Bassett, who is an experienced municipal lawyer on the village board in Shiloh. There was give and take and they negotiated terms. Even though Mr. Mannion in his brief talks about the certain languages hidden in the agreement and technicality, the fact is that the parties negotiated this agreement. When they filed the DJ action, we then filed a counterclaim for breach of contract and they then dismissed the DJ action and filed a motion to dismiss the breach of contract action. Ultimately, Judge Locono, who was factually, it was a very difficult factual resolution for him, ultimately determined that the complaint should be dismissed because Freeburg didn't have the authority. In the reply brief, and again this morning, I would direct the court's attention to certain language in Judge Locono's statements at the time we had the hearing on the motion. At page 6 of the supplemental record on appeal, he says, quote, something just hits you wrong, end quote. Quote, I don't think anybody can look at these facts and say that Freeburg did the right thing. End of quote. That's at page 21 of the supplemental record. Quote, it doesn't seem right, end of quote. Quote, it's totally preposterous, end of quote. Those are at page 14. And then I think my favorite one, quote, it still stinks to have the municipality do all these things and then just say, quote, well, we really didn't have the authority, end of quote, at page 31. Now, you can't be much more clear than that, that this just isn't right. Now, I am the first one to agree that there certainly are cases that say that, well, yeah, Freeburg should have done this, should have done that. But the fact remains that the parties negotiated this agreement in good faith. It was presented to the village council. The citizens of Freeburg were certainly free to comment on it. It was passed. It was reported. The Helms family did what they were supposed to do. And now Freeburg says, well, gee whiz, that's too bad. I'm reminded and put in my brief a citation to Volk v. Bartelsmeyer, which was a case that was presented to this court, where the state of Illinois made a promise to build an overpass as a part of a land condemnation case. And they admit that they made that promise. And then ultimately, when it came time to perform, they said, well, no, we can't do that. We didn't really have the authority to do that. And in that case, Justice Lewis, in a special concurring decision, says he talks about, quote, reneging on the contract, end of quote. Quote, we should put a stop to it, the state's conduct, here and now. We should not, as a matter of public policy, allow the state, parenthetically cities or villages, to renege on its promises. That's what we'll hear. That's exactly what they're doing. They're saying, we don't want to do this. We took advantage of it. And there's a little issue about whether the annexation is valid or not. In the exchange with Judge Lopano and Mr. Mannion, Mr. Mannion says, well, they may just have to file another action to de-annex. And my thought was, wait a minute. You solicit them to annex. You sue them for a charge of judgment action. Then you dismiss that case. And now you say, well, gee, that's too bad. You're still in the village. In the brief, they say, well, maybe that annexation wasn't valid. So we really don't know. There are other expressions that I'm reminded of. We expect more from our public leaders. My favorite one, but you promised. I think we all heard that as parents. What would happen if the shoe was on the other foot? Well, that's not really applicable here because the health family got already informed. So what happens if this court affirms? The vast majority of agreements between citizens and municipalities may very well be void using this same kind of an approach. The village said, well, no, we needed to approve the appropriation for this prior to entering into this agreement with the health family. Now, they had already entered into a contract with the architect. The architect, he'd already drawn the plans. The plans were already approved by the IEPA. He's done all those things. What they didn't do, although there is some language in an appropriation where there is a large amount of money that's allocated, although they don't say exactly what it's allocated for, the village says, well, it's the citizen's responsibility to know that. So what happens is that not only do they attempt to say, well, no, we didn't have an appropriation, but they say, well, you should be able to read the budget and know that when we say hundreds of thousands of dollars for sewers, we mean for projects other than yours. Now, I wouldn't have known that you're supposed to look at the appropriation. But that's not my cortex. But if I did, if I was a common citizen and I looked at a budget and said X hundred thousand dollars for sewers, I would say, okay, well, they've appropriated it. Now, the issue of whether that's a penalty or the $300 a day, the Federal Open will never treat it. But I think we can look at that as an example of how ludicrous this is. Their position would be, well, before the $300 penalty would be applicable, the village has to pass an ordinance approving it. Well, they're not going to approve an ordinance to pay money that they're not obligated to pay because they haven't reached the agreement yet. That's simply not going to happen. So what way is there to ensure that municipalities perform evidence? So if this court wants to affirm, then tell us. Give us some guidelines to say what are we supposed to do in these situations? I suggest that there's no way to enter into a good faith contract with a municipality and have an enforceable contract. If the facts situation in this case aren't bad enough, then I hesitate to think what is bad. So even if officials sign, even if a village and city council approve, before the general public in a public meeting where the citizens can voice their opinions, and then they report to the reporter's office for the whole world to see, if they can then come in and say, we don't really need to be bound by that, then words that Judge Lopenoe talks about, it doesn't seem right, it's totally preposterous, it stinks, blah, blah, blah, then that's going to be the standard. I direct the court's attention to the diversified services case. It's cited in page, well, it's in my regular brief, and then it's also in the second paragraph of the argument section of the reply brief, diversified computer services, Inc. Both, however, there's another class of municipal contracts distinct from the void type, where the municipality has the power to enter into the contract. Here it has, to this class of contracts, the municipality may not assert its want of authority or the irregular exercise thereof, where to do so would give it an unconscionable advantage over the other party. Now, if this is not an unconscionable advantage, again, it can't be. So, let's look at what we want. We'd like this court to reverse the case so we can go back, when we ask for it in the trial court, to amend the secret covering for estoppel. So what are the elements? No one says the parties didn't enter into an agreement. Nobody says the agreement was ambiguous. Nobody said the Helms didn't have the authority to agree. Nobody said the Village didn't agree to be met. The Village simply wants to be off the hook. They want to say, tough luck, too bad, sorry we misled you. Now, if you look at the elements of estoppel, they all fit here completely. The Village made an unambiguous premise. It was relied upon the Helms family. Reliance was expected and foreseeable. The Helms family relied upon the premise to its detriment. The reliance was reasonable and justified. The Helms family simply wants what they agreed to get. We're not seeking to force the Village to do anything other than what they said they would be willing to do. That's what courts are supposed to be about. Courts are not supposed to just rely upon little technicalities. That just doesn't make any sense. So we're not asking the Village to do anything other than what they promised. And we would ask the Court to reverse the decision of Judge Lopino and say, Yeah, Judge, you were right. All of these adjectives are applicable. Either you've got to live up to what you promised or you have to pay down. Thank you. Please, the Court and Mr. Sterling. My name is Brian Mannion. I represent the Village of Freeburg. I want to speak to you first about the appropriation process for municipalities. Every year, a municipality is required to pass an appropriation ordinance, the most important thing that a municipality does each year. Basically, it sets a cap and defines what the municipality can spend money on. If they weren't to pass the appropriation ordinance, they couldn't spend any money or contract to do anything for the entire fiscal year. This case has to do with very clear statutory provisions. The most important one in this case is 8-1-7 of the Illinois Municipal Code, which says, basically, municipal corporate authorities of the municipality cannot enter into any contract if there's no prior appropriation for the expense of that contract. And it specifically says that's the case whether the object of the expenditure has been ordered by the corporate authorities or not. That's the case here. There's no dispute that the corporate authorities passed an ordinance approving the annexation agreement. The issue is whether they could legally do that. And without a prior appropriation for the cost of this annexation agreement, there was no authority. It was an ultra-various act of the corporation. Now, this statute's been on the books virtually in the exact same form for over 100 years. The Illinois Supreme Court addressed this statute in the DeKalb case. And in DeKalb, a group of about 15 taxpayers filed a suit against the city of Streeter and an engineer that had entered into a contract with the city of Streeter. In that case, there had been no appropriation for engineering services to design the sewer for the city of Streeter. And this group of taxpayers filed a suit to prohibit the city of Streeter from paying a $34,000 bill submitted for this design prepared by the engineer. The Supreme Court basically said it didn't matter. The fact that the engineer had already prepared the plans and done all the work, it didn't matter that the city of Streeter had already paid about $3,000 towards the bill. The city could not be stopped from asserting that it was an invalid agreement and that it didn't have authority to act. And that's based on an even longer-standing print of cases, the May case out of Chicago,  is they're presumed to know what the authority of the agents and officers of the municipality is. So in this case, the Helms family, it was their burden to make sure that the corporate authorities of the village of Freedberg stayed within the balance of what they could legally do. So let's talk now a little bit about what was actually in the appropriation ordinance before these contracts were entered into. The Wastewater Department has a separate itemized appropriation in the appropriation ordinance. It's broken down into different categories. The largest expense is personnel, paying the employees in the Sewer Department. If you look through the appropriation which is attached to the appendix of my brief, you'll see that that's approximately $200,000 out of the $400,000 or so for the annual appropriations for the Wastewater Department. Now that personnel expense, that's broken down by wages, pensions, insurance, so forth. Clearly, these items aren't appropriations for the construction of a two-mile sewer line to extend the sewer service up north to these properties that are involved here. At the trial court level, the only argument that there was about whether there was actually a prior appropriation was an argument by the Helms family that the entire Department-wide appropriation for the Wastewater Department could be stacked for these two years, which would get up to a figure of the $800,000, which would come close to covering the cost of this expense. However, the Siegel case, which is also an Illinois Supreme Court case dealing with the City of Belleville, provides that you can't just look at what the Department-wide appropriation is. There has to be a specific appropriation that a taxpayer would look at and say, all right, this is the expense that we're talking about spending here. In the Siegel case, there were three appropriations for the Fire Department that were nonspecific. The City of Belleville entered into an agreement to purchase a fire engine for $13,000. The taxpayers objected. The City and the seller of the fire engine wanted to do the deal. The taxpayer said you can't because you don't have a specific appropriation, and the Illinois Supreme Court said that's right. Without a valid appropriation, you can't spend the money, you can't enter into the contract. So that's the case here. There's no appropriation in either of these ordinances talking about a $600,000 expense to construct a two-mile sewer line north of the village to these properties. There's no discussion of constructing a lift station to service that line. In fact, in one of the appropriation ordinances, it talks about a different sewer line extension to the Cherry Tree Lane development in the village. So there's no real genuine issue of material fact about there being a prior appropriation in this case. I want to talk now a little bit about the diversified computer case that opposing counsel mentioned. That case is sort of a similar situation. Again, there was a contract without prior appropriation and authority to enter into the contract. The village, or the town in that case, after about 15 months of making payments on a lease payment agreement, decided they were dissatisfied and they wanted to terminate the agreement. The contractor sued the town. The case went to a jury trial and they got a verdict. On appeal for the first time, the town discovered that there was no prior appropriation for the full cost of the lease purchase agreement, embraced it, and the court in that case said that this is essentially an illegal contract. It's prohibited by the municipal code, so it cannot be enforced. Moving on into the Vogt case, which opposing counsel discussed. Vogt had nothing to do with whether the contract was legal or whether there was authority to enter into the contract. In Vogt, the issue was whether there was sovereign immunity for the state of Illinois, whether the contract was barred by the statute of limitations, the statute of rights, and whether there was sufficient evidence in the trial court to support the existence of an agreement. So there was no issue in Vogt like the issue here as to whether the contract was prohibited by law, whether the people making the contract on behalf of the state had the legal authority to enter into the contract. So it's completely distinguishable from the facts that are present here. Thank you very much. Just very briefly, Mr. Mannion cites the statute, and he says it's been on the books for more than 100 years. Well, I suggested to the court that a lot of things have changed in 100 years with respect to the responsibility of government and the ability of a citizen to challenge what the government does. It's a different time today. He suggests that it's the Helms family's burden to know whether Freeberg could do what it promised to do. Something about that just kind of smacks me as not right. I mean, they're not supposed to know themselves whether they have the authority? I mean, what are we doing here? I mean, what's right in this situation? He says there has to be a specific appropriation. That means that the Helms, in addition to being municipal lawyers and knowing that Freeberg couldn't do what it promised to do, unless they were also experts in the cost of sewers, to know that the amount that had been appropriated wouldn't have been sufficient, ignoring the fact, of course, that they could have built part of the system. And then Freeberg would say, well, no, you have to have an appropriation for the whole system. They attempt to distinguish the diversified case. And the answer to that, to me, is very, very simple. Can they distinguish the fact that this case fits squarely within the language it talks about and quote, unquote, unconscionable advantage? There can't be a better case for unconscionable advantage. And the reason that I cited both was that, and I cited both before and several times in other cases, the government has a certain responsibility. I mean, they can't just hide behind a shield. They ought to be held to the same standards as a citizen does when they enter into agreements. So is vote distinguishable on the facts? Probably. Is it distinguishable on language that says, uh-uh-uh, you ought not be able to do that? You enter into an agreement, you live up to it. If not, we're going to hold you responsible. And that's exactly what we need to do with the village of Freeberg. Or everybody is at risk. Thank you very much.